FILED
Jan 18, 2023
03:36 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT COOKEVILLE

| | | |
|---|---|---|
| **JASON NEUNER,** | ) | **Docket No. 2021-04-0349** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 115662-2020** |
| **TENN. AUTO CARRIERS, LLC,** | ) | |
| **Employer,** | ) | **Judge Robert Durham** |
| **And** | ) | |
| **SUNZ INS. CO.,** | ) | |
| **Insurer.** | ) | |

## EXPEDITED HEARING ORDER DENYING BENEFITS AND REFERRING TO THE COMPLIANCE PROGRAM

This Court held an Expedited Hearing on January 10, 2023. Mr. Neuner sought a penalty referral against Tennessee Auto Carriers (TAC), asserting that TAC failed to offer panels in violation of Tennessee Code Annotated section 50-6-204 and improperly delayed a referral from an authorized physician. Mr. Neuner also asked for additional temporary disability benefits because TAC erred in calculating his average weekly wage by including weeks with reduced pay that should not have been included. The Court holds that TAC's omissions warrant a penalty referral, but that Mr. Neuner is not entitled to additional temporary disability benefits.

## History of Claim

Mr. Neuner fell from his truck trailer on December 10, 2020, and suffered significant skull fractures, lumbar and thoracic vertebra fractures, right-sided rib fractures, and a SLAP tear in his right shoulder. The accident also resulted in substantial hearing loss in Mr. Neuner's right ear. However, the injury that gave rise to this dispute is Mr. Neuner's severe chest and rib pain.

After Mr. Neuner's initial hospitalization, he treated with a neurosurgeon, an otolaryngologist, and a thoracic surgeon. He testified that he did not select these doctors from formal panels and did not know he was entitled to panels. Instead, his nurse case

1

manager, Elaine Donhoffner, communicated with his wife through texts about choosing a doctor. Still, Mr. Neuner admitted he was satisfied with the treatment he received from these doctors.

Mr. Neuner saw thoracic surgeon Dr. Ward Houk for severe rib and chest pain. A CT scan revealed multiple right-sided displaced rib fractures with callous formation as well as a non-displaced fracture at T7 in the thoracic spine, but Dr. Houk did not recommend surgery. In April 2021, with Ms. Donhoffner present, Dr. Houk "discussed options" for further care including a "referral to pain management (defer to PCP)."

Mr. Neuner testified that Ms. Donhoffner told him that she thought an "H-Wave unit" might decrease his pain. She recommended that he treat with physiatrist Dr. Jeffrey Hazlewood, who she claimed was the only doctor in Tennessee authorized to prescribe an H-Wave unit. Mr. Neuner said that neither Ms. Donhoffner nor TAC offered a panel or any other choices, and to his knowledge, his primary care provider was never consulted about a pain management referral.[1]

Dr. Hazlewood prescribed the H-Wave unit, although he told Mr. Neuner that it had never been tested for use on rib or chest pain. Mr. Neuner testified that while the H-Wave unit relieved some of his back and shoulder pain, it only eased his chest and rib pain for a few hours after use. Mr. Neuner treated with Dr. Hazlewood through November 2021. Although Dr. Hazlewood recommended a follow-up appointment after the November visit, it was never scheduled.

While treating with Dr. Hazlewood, Mr. Neuner also treated with orthopedist Dr. Lydia White for his right-shoulder tear. Given Mr. Neuner's continued complaints of rib pain, Dr. White recommended in November 2021 that he see a physiatrist. TAC gave him a panel that included Dr. Hazlewood, but Mr. Neuner chose Dr. Michael Bowman instead. Mr. Neuner testified he chose Dr. Bowman because Dr. Hazlewood's treatment was doing little to ease his pain, and he assumed that Dr. Bowman was replacing Dr. Hazlewood.

Dr. Bowman treated Mr. Neuner from December through June 2022 with only little success in easing Mr. Neuner's pain. In June, Dr. Bowman referred Mr. Neuner to the Pain Management Group (PMG) for evaluation and treatment of neuralgia.

TAC did not honor the referral, but instead insisted that Dr. Hazlewood was already the authorized physician for pain management. TAC arranged an appointment with Dr. Hazlewood and informed Mr. Neuner that if he did not attend, he risked losing further benefits due to non-compliance.

Mr. Neuner returned to Dr. Hazlewood, although he did so "under protest." He said

---

[1] Ms. Donhoffner did not testify at the hearing.

2

that Dr. Hazlewood told him that he did not require opioids and he would need to learn to live with his pain.  He also asked Mr. Neuner to sign a "pain management agreement" that said he would only seek pain management through Dr. Hazlewood.  Mr. Neuner refused to do so unless his attorney reviewed the agreement.  Dr. Hazlewood declined to allow him time to do so, and Mr. Neuner left.

Mr. Neuner and TAC wrangled over the issue of pain management for several months, with Mr. Neuner insisting that he be allowed to treat with Pain Management Associates, and TAC maintaining that it needed further discovery to ascertain who made the referral to Dr. Hazlewood.  In December 2022, TAC took Mr. Neuner's deposition, and a week before this hearing authorized a visit to PMG.[2]

As for Mr. Neuner's average weekly wage, the facts are undisputed.  In the Spring of 2020, the COVID-19 pandemic spread across the globe.  TAC offered its drivers the option of staying home rather than risk infection from driving to ports and transporting cars that came from overseas.  Mr. Neuner elected to stay home.  He testified that he did so because he had his wife and minor children to consider and he felt the risk was too great given the fear and uncertainty that surrounded COVID-19 at the time.

Mr. Neuner did not work for eight weeks.  He admitted that TAC never shut down its business and he could have returned to work at any time. He did not receive any compensation during the first two weeks, but TAC paid him reduced wages for the next six.  The parties stipulated that if the eight weeks are included in calculating Mr. Neuner's average weekly wage, then the compensation rate of $834.45, which was the rate TAC used while Mr. Neuner was temporarily disabled, is correct.  Therefore, no additional temporary disability benefits are owed.[3]  However, if the eight weeks are removed, Mr. Neuner's compensation rate should be $862.58, and TAC would owe $2,813.00 in additional temporary disability benefits.

### Findings of Fact and Conclusions of Law

The issue of whether TAC was required to authorize treatment with PMG was resolved by agreement before this hearing.  However, Mr. Neuner contended that TAC should still be referred for penalty for not offering a pain-management panel when Dr. Houk first referred him and for initially refusing to honor Dr. White's referral for pain management.

---

[2] On a side note, Mr. Neuner's authorized ENT recommended in the spring of 2022 that he see a neurologist for his work-related Bell's Palsy.  TAC gave a panel, but the chosen doctor refused to see Mr. Neuner.  A selection from a second panel did likewise.  Several months after the initial referral, a doctor chosen from a third panel met with Mr. Neuner through a video conference but has not treated him..

[3] The parties stipulated that Mr. Neuner was temporarily totally disabled from December 10, 2020, through November 7, 2022, when he began working light duty from home at his pre-injury wages.

3

Tennessee Code Annotated section 50-6-204 (2022) governs the employer's obligation to treat an injured employee. Subsection (a)(3)(A)(i) requires that the employer provide a panel of physicians from which the employee can choose a treating physician. Subsection (D)(i) requires the employer to list the panel on a Bureau form. The employee should then make his selection, sign and date the completed form, and return it to the employer.

Under subsection (a)(3)(A)(ii), when the authorized physician makes a referral to a specific specialist, the employer has three days to authorize the referred provider or give the employee a panel within the referral's specialty. If an authorized doctor makes a referral that does not name a specific provider but only a specialty, then the employer must offer a panel so that the employee may choose a doctor within that specialty.

In this case, Mr. Neuner testified that he never received a panel on a Bureau form for any of the doctors that treated him, and he did not know he was entitled to one, until TAC offered a panel of physiatrists after Dr. White's recommendation. He also said that he never received any choice for pain management after Dr. Houk's referral and that, to his knowledge, his primary care physician did not recommend Dr. Hazlewood either. He simply went to Dr. Hazlewood on Ms. Donhoffner's instruction. TAC did not introduce any evidence to rebut these assertions.

TAC also did not dispute the fact that it did not immediately honor Dr. Bowman's referral to PMG or offer a panel of pain management physicians within three days of the referral. In its defense, TAC maintained that Dr. Hazlewood was already the authorized pain management doctor and that it needed to conduct discovery to find out how Mr. Neuner became Dr. Hazlewood's patient. Shortly after taking Mr. Neuner's deposition in December, TAC authorized a visit to PMG.

Given the record, the Court holds that the facts warrant a referral to the Bureau's Compliance Program to determine if TAC should be penalized for failing to properly provide medical care under Tennessee Code Annotated section 50-6-204. TAC's defense and its eventual authorization of PMG may serve as mitigating factors, but that will be for the Compliance Program to decide.

The Court now turns to Mr. Neuner's claim that TAC miscalculated his average weekly wage. Mr. Neuner must show he is likely to prove at trial that the eight weeks he missed work in the year before his injury should not be included in calculating his average weekly wage. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). The Court holds that he did not do so.

Here, the parties stipulated that in the Spring of 2020, as COVID-19 was spreading rapidly worldwide, TAC offered all its drivers the option of staying home instead of

working, transporting cars from other countries. Mr. Neuner stayed home for eight weeks, although he could have gone back to work full-time at any time during this period. He was not paid anything the first two weeks, but TAC did pay him for the last six he stayed home, albeit at a substantially reduced rate. The reason he stayed was his concern about transmitting COVID-19 to his family given the potential severity of the disease.

Tennessee Code Annotated section 50-6-102(3) defines "average weekly wage" as the average of the wages the employee earned for the fifty-two weeks before his injury. If the employee "lost" more than seven days of work during that period, then those days are deducted and the remaining earnings are divided by the number of weeks remaining after the lost days are removed.

The Supreme Court has long held that for days to be considered lost, the reason for the absence must be due to "sickness, disability, or some other fortuitous circumstance." *Russell v. Genesco, Inc.*, 651 S.W.2d 206, 210 (Tenn. 1983). "Voluntary absences from work are not deducted from the fifty-two week period." *Goodman v. HBD Indus.*, 208 S.W.3d 373, 377 (Tenn. 2006).

Fortuitous circumstances include "the closing of a plant for repairs, the occasional loss of employment due to bad weather, or a reduction of work due to market-driven reasons, such as an unforeseen shortage of material or a lack of orders." *Cantrell v. Carrier Corp.*, 193 S.W.3d 467, 472 (Tenn. 2006), citing *Hartley v. Liberty Mut. Ins. Co.*, 276 S.W.2d 1 (Tenn. 1954). The determination of whether an absence was due to sickness, disability, or fortuitous circumstance is "dependent upon the facts and circumstances of each case." *Id*.

Although not on point, *Goodman* is useful in deciding whether Mr. Neuner's absence should be considered a "fortuitous event." In *Goodman*, the employee missed twenty-eight weeks of work the year before his injury because he was on strike. He argued that those weeks should not count in calculating his average weekly wage because he was required to join the union and then participate in the strike. *Goodman*, at 378.

The Supreme Court disagreed, reasoning that the law made it illegal to require union membership, and other employees had chosen to cross the picket line and continue working. It explained that while the employee may have felt pressure to join the strike, he was not required to do so, and his participation was voluntary. Thus, the Court held that the weeks he was on strike should be included in calculating his average weekly wage. *Id*.

This Court holds that a similar result must occur in this case. Mr. Neuner did not testify that either he or his family was sick while he was off work or that he faced circumstances that placed him or his family at greater risk from COVID-19 than his co-workers. Although he cannot be faulted for doing so, the fact remains that he voluntarily chose to remain off work while his employer had work available. Given these facts, the

5

Court denies Mr. Neuner's request for additional temporary total disability benefits.

IT IS, THEREFORE, ORDERED THAT:

1. Mr. Neuner's request for additional temporary total disability benefits is denied.

2. This case is referred to the Bureau's Compliance Program to determine if, and to what extent, a penalty is warranted.

3. This case is set for a Scheduling Hearing on **February 9, 2023, at 9:00 a.m. Central Time**. The parties must call 615-253-0010. Failure to appear might result in a determination of the issues without the party's participation.

**ENTERED on January 18, 2023.**

_____

**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice with attachments
3. Request for Expedited Hearing
4. Employer's Response to Request for Expedited Hearing
5. Employer's Objection to Employee's Request for Expedited Hearing without an Evidentiary Hearing
6. Amended Order Setting Expedited Hearing
7. Westmoreland's Late-Filed Exhibit List

Exhibits:
1. Rule 72 Declaration of Jason Neuner with attachments
2. Rule 72 Declaration of Allysa Neuner
3. Transcript of Jason Neuner's Deposition

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on January 18, 2023.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| R. Stephen Waldron | | | X | arlenesmith@wfptnlaw.com |
| C.J. Statham | | | X | cjstatham@mijs.com abhaley@mijs.com |
| Compliance Program | | | X | WCCompliance.Program@tn.gov |

_____

**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

7

**FILED**
**Dec 27, 2022**
**02:27 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT GRAY

| | | |
|---|---|---|
| **SALVADOR ENRIQUEZ,** | ) | **Docket No. 2020-02-0318** |
| **Employee,** | ) | |
| **v.** | ) | |
| **DEFENDER SERVICES, INC.,** | ) | |
| **Employer,** | ) | **State File No. 1013152019** |
| **And** | ) | |
| **AMERICAN CASUALTY** | ) | |
| **COMPANY OF READING,** | ) | |
| **PENNSYLVANIA,** | ) | **Judge Brian K. Addington** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER

---

The Court held an expedited hearing on December 15, 2022, on whether Mr. Enriquez is entitled to past temporary disability benefits. Defender argued that Mr. Enriquez does not qualify for these benefits because the treating physician placed him at maximum medical improvement on June 9, 2020. For the reasons below, Mr. Enriquez is entitled to the requested benefits.

### History of Claim

On December 19, 2019, Mr. Enriquez injured his left knee when he fell at work. Defender authorized Dr. Larry Waldrop to surgically repair Mr. Enriquez's knee ligament. On June 9, 2020, Dr. Waldrop placed him at maximum medical improvement, but he noted he would likely require knee replacement surgery in the future and assigned light-duty restrictions.[1]

Mr. Enriquez had further symptoms, and on July 14, he saw Dr. Waldrop for worsening pain. That day he ordered an MRI and removed Mr. Enriquez from work. On November 11, Dr. Waldrop reviewed the MRI results and modified the restrictions to light

---

[1] Defender paid Mr. Enriquez $584.15 in weekly temporary benefits until that date.

1

duty-lifting no more than five pounds. Mr. Enriquez's knee pain continued over the next several months despite multiple injections.

Dr. Waldrop completely removed Mr. Enriquez from work on July 19, 2022, and Defender restarted temporary total disability benefits. Dr. Waldrop performed a court-ordered left-knee replacement for Mr. Enriquez in August. Mr. Enriquez testified that he experienced less pain and could ambulate better after his knee replacement.

On September 1, Dr. Waldrop responded to a questionnaire, marking "no" to the question, "was Mr. Enriquez at Maximum Medical Improvement on June 21, 2020." Dr. Waldrop answered "yes" when asked if Mr. Enriquez was restricted to light duty from November 11, 2020, until July 19, 2022.

Mr. Enriquez testified that he attempted three times to find work within his restrictions. He said that he has not worked since June 20, 2020, because of his knee pain and restrictions. At the hearing, he called two local employers, who testified that Mr. Enriquez requested a construction job from them; however, neither had available work within his restrictions. Mr. Enriquez recounted that he tried operating a string trimmer but could not physically do it.[2]

Based on Dr. Waldrop's September 1 opinion, Mr. Enriquez asked for an accrued award of temporary disability benefits from June 9, 2020, to July 18, 2022. This represents temporary partial benefits for June 9, 2020, through July 13; temporary total benefits for July 14 through November 11; and temporary partial benefits beginning November 12, 2020, through July 18, 2022.

Defender argued that it did not owe temporary benefits because Mr. Enriquez reached maximum medical improvement and was released to light-duty work in June 2020. It further asserted that Mr. Enriquez has not proven his period of disability, nor that he was unable to work light duty. Lastly, it argued that receiving treatment after the authorized physician placed him at maximum medical improvement did not rescind that status.

## Findings of Fact and Conclusions of Law

At an Expedited hearing, Mr. Enriquez must show he would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2022). The only issue is whether Mr. Enriquez was entitled to temporary disability benefits.[3]

---

[2] The parties did not introduce evidence of what, if any, work Mr. Enriquez could perform for Defender.
[3] During the second expedited hearing, the undersigned held that Mr. Enriquez came forward with sufficient evidence to show he was likely to succeed at a final hearing in showing the need for his total knee replacement was primarily due to his December 19, 2019 injury.

To be eligible for temporary benefits, Mr. Enriquez must prove: "(1) that he became disabled from working due to a compensable injury; (2) that there is a causal connection between the injury and his inability to work; and (3) the duration of the period of disability." *Hibbitts v. Kim Royal d/b/a Royal Guttering,* 2021 TN Wrk. Comp. App. Bd. LEXIS 10, at *6 (Mar. 23, 2021).

In a previous expedited hearing, the Court found Mr. Enriquez's condition primarily related to his work injury. Further, Dr. Waldrop never released Mr. Enriquez, and his status has remained at sedentary or no work during the period of disability in question. Additionally, Mr. Enriquez offered testimony of two local employers who stated they did not have construction positions to accommodate his restrictions.

As to Defender's assertion that he worked during the alleged period of disability, Mr. Enriquez testified that he attempted to perform minor yard and construction work but was unable to do so, and Defender presented no proof that Mr. Enriquez earned any income during the period in question. The Court finds that these unsuccessful attempts to work bolster Dr. Waldrop's opinion concerning the work restrictions. Mr. Enriquez should not be penalized for attempting to find work.

Additionally, the Court rejects Defender's argument that Mr. Enriquez was at maximum medical improvement. Although Dr. Waldrop initially documented maximum medical improvement and rated Mr. Enriquez's injury, he removed Mr. Enriquez from work less than one month later. Further, the parties were in active dispute over the knee replacement surgery, which the Court eventually ordered. With Mr. Enriquez's continued treatment, knee replacement, and Dr. Waldrop's new September 1, 2022, opinion, the Court holds that Mr. Enriquez had not reached maximum medical improvement in June 2020.

Considering the findings above, the Court holds that Mr. Enriquez is likely to prevail at a hearing on the merits in showing his entitlement to the temporary benefits he seeks.

**IT IS THEREFORE ORDERED** as follows:

1. Defender shall pay Mr. Enriquez temporary partial disability benefits from June 9, 2020, through July 13, which represents five weeks at the weekly rate of $584.15 totaling $2,920.75.

2. Defender shall pay Mr. Enriquez temporary total disability benefits from July 14, 2020, through November 11, or seventeen weeks and four days at the weekly rate of $584.15 totaling $10,097.54.

3. Defender shall pay Mr. Enriquez temporary partial disability for the period of November 12, 2020, to July 18, 2022, at the weekly rate of $584.15 totaling eighty-six weeks and three days or $50,487.25

4. Mr. Beiger is entitled to a fee of up to 20% from Mr. Enriquez from the total amount ordered.

5. This case is set for a Status Hearing on **February 14, 2023, at 2:00 p.m. Eastern** time. The parties must dial **855-543-5044** to participate in the hearing.

6. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The insurer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED December 27, 2022.**

/s/ Brian K. Addington
_____
**BRIAN K. ADDINGTON, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Salvador Enriquez
2. Wage Statement
3. Affidavit of Employer
4. Employment Record
5. Designated Medical Records
6. Medical Records-Appalachian Orthopaedics (9/6/2022-11/15/2022)
7. Medical Records- Physical Therapy Services, PA
8. Dr. William Hovis IME, Medical Records and Correspondence
9. Dr. William Hovis Deposition Transcript
10. Transcript of Expedited Hearing (June 30, 2021)

4

11. Transcript of Expedited Hearing (March 31, 2022)
12. Deposition Transcript of Dr. Larry Waldrop
13. Social Security Card (for identification only)
14. California ID (for identification only)


Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice (2/26/2021)
3. Dispute Certification Notice (10/8/2022)
4. Expedited Hearing Order (4/12/2022)
5. Expedited Hearing Order (7/7/2021)
6. Employee's Position Statement (7/25/2022)
7. Hearing Request
8. Defendant's Expedited Hearing Brief
9. Claimant's Brief in Support
10. Claimant Salvador Enriquez's Exhibit List for the Expedited Hearing
11. Claimant Salvador Enriquez's Witness List for the Expedited Hearing


**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent on December 27, 2022.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Daniel Bieger, Employee's Attorney | | | X | dan@biegerlaw.com paige@biegerlaw.com |
| J. Brent Moore, Employer's Attorney | | | X | bmoore@ortalekelley.com ccaruso@ortalekelley.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

5



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____        ☐ Motion Order filed on _____

☐ Compensation Order filed on_____        ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*